0UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:                                              :
                                                    :        Chapter 7
       TRANSCARE CORP., *et al*.,                 :        Case No. 16-10407 (SMB)
                                                    :
          Debtors.                   :        (Jointly Administered)

------------------------------------------------------------X

SHAMEEKA IEN on behalf of herself and all           :
Others similarly situated,                          :
          Plaintiff,                 :        Adv. Proc. No. 16-1033
                                                    :
      --against--                            :
                                                    :
TRANSCARE CORP., TRANSCARE                           :
NEW YORK, INC., TRANSCARE ML, INC., TC              :
AMBULANCE GROUP, INC., TRANSCARE                     :
MANAGEMENT SERVICES, INC., TCBA                      :
AMBULANCE, INC., TC BILLING AND                      :
SERVICES CORP., TRANSCARE MARYLAND,                 :
INC., TC AMBULANCE NORTH, INC.,                      :
TRANSCARE HARFORD COUNTY, INC.,                      :
LYNN TILTON, ARK CLO 2001-1 LIMITED,                :
ARK INVESTMENT PARTNERS II, L.P.,                   :
PATRIARCH PARTNERS, LLC, and                        :
PATRIARCH PARTNERS III, LLC,                         :
                                                    :
         Defendants.                 :

------------------------------------------------------------X

JOSEPH PENA, MICHELLE ESCOBAR, and                  :
MERCEDES TAVAREZ, on behalf of themselves           :
and others similarly,                               :        Adv. Proc. No. 16-1048
         Plaintiffs,                 :
                                                    :
      --against—                             :
                                                    :
TRANSCARE CORP., TRANSCARE                           :
NEW YORK, INC., TRANSCARE ML, INC., TC              :
AMBULANCE GROUP, INC., TRANSCARE                     :
MANAGEMENT SERVICES, INC., TCBA                      :
AMBULANCE, INC., TC BILLING AND                      :
SERVICES CORP., TRANSCARE MARYLAND                  :
INC., TC AMBULANCE NORTH, INC.,                      :
TRANSCARE HARFORD COUNTY, INC.,                      :
PATRIARCH PARTNERS, LLC, PATRIARCH                   :

PARTNERS III, LLC, ARK CLO 2001-1    :
LIMITED, ARK INVESTMENT PARTNERS    :
II, L.P., and ARK INVESTMENT GP II, LLC,    :
                                                                :
                              Defendants.         :
------------------------------------------------------------------X

**MEMORANDUM DECISION GRANTING MOTION TO DISMISS SUBSEQUENTLY
FILED ADVERSARY PROCEEDING AND APPOINTING INTERIM CLASS COUNSEL**

**A P P E A R A N C E S :**

OUTTEN & GOLDEN LLP
*Attorneys for Shameeka Ien*
3 Park Avenue, 29th Floor
New York, NY 10016

       Jack A. Raisner, Esq.
       René S. Roupinian, Esq.
          Of Counsel

CARY KANE LLP
*Attorneys for Pena Plaintiffs*
1350 Broadway, Suite 1400
New York, NY 10018

       Larry Cary, Esq.
       Tara Jensen, Esq.
       Liz Vladeck, Esq.
          Of Counsel

PROSKAUER ROSE LLP
*Attorneys for Defendants*
Eleven Times Square
New York, NY 10036

       Irena M. Goldstein, Esq.
       Kathleen M. McKenna, Esq.
          Of Counsel

LAMONICA HERBST & MANISCALCO, LLP
*Attorneys for Salvatore LaMonica, Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793

       Holly R. Holecek, Esq.
          Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Shameeka Ien, the plaintiff in class action adversary proceeding no. 16-1033 (the "Ien Proceeding") brought under the federal and New York Worker Adjustment and Retraining Notification Acts, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"), and New York Labor Law § 860 *et seq*., moved to dismiss the subsequently filed class action adversary proceeding no. 16-1048 (the "Pena Proceeding"), or alternatively, consolidate the Pena Proceeding with her earlier action.  Ien also moved to appoint her counsel, Outten & Golden LLP ("Outten & Golden"), as interim class counsel under Rule 23(g)(3) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7023 of the Federal Rules of Bankruptcy Procedure.  For the reasons that follow, the Court grants the motion to dismiss the Pena Proceeding and appoints Outten & Golden as interim class counsel.

## BACKGROUND

Prior to the commencement of the bankruptcy case, the Debtors[1] operated an emergency medical transportation business primarily under contracts with municipalities, counties and other governmental agencies.  (*See Joint Administration Motion* at ¶¶ 5-7 (ECF/Main Case Doc. # 7)).[2] On February 24, 2016, the Debtors filed voluntary petitions for relief under chapter 7, and

---

[1]      The filing entities, hereafter referred to collectively as the "Debtors," are: TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc. and TransCare Harford County, Inc.  (*Motion for the Entry of an Order, Pursuant to 11 U.S.C. §§ 105(a) and 721, Authorizing the Chapter 7 Trustee to Operate the Debtors' Businesses and Pay Certain Operating Expenses of these Estates*, dated Feb. 26, 2016 ("*Joint Administration Motion*"), at 2-3 (ECF/Main Case Doc. # 7).)

[2]      "ECF/Main Case Doc. #__" refers to documents filed on the docket of the main bankruptcy case, *In re TransCare Corporation*, Case No. 16-10407 (SMB).  "ECF/Ien Doc. #__" refers to documents filed in the Ien Proceeding, Adv. Proc. No. 16-1033 (SMB), and "ECF/Pena Doc. #__" to documents filed in the Pena Proceeding, Adv. Proc. No. 16-1048 (SMB).

Salvatore LaMonica, Esq. was appointed as the interim chapter 7 trustee (the "Trustee") on

February 25, 2016.  (*Id.* at ¶¶ 2-3.)  He subsequently became permanent trustee by operation of

law.  *See* 11 U.S.C. § 702(d).

### A.  WARN Act Proceedings in the District Court and the *Ien Complaint*

Following the commencement of the Debtors' bankruptcy cases, former employees of the

Debtors commenced three separate class action suits in the United States District Court against

certain non-debtor defendants under the federal and New York WARN Acts.[3]  With certain

exceptions, the WARN Acts prohibit mass terminations of employees without advance written

notice.  *See* 29 U.S.C. § 2102(a); N.Y. LAB. LAW § 860-b(1) (McKinney's 2015).  Employers

who fail to give notice under the Acts may be liable for back pay and employee benefits.  29

U.S.C. § 2104(a)(1); N.Y. LAB. LAW § 860-g(1).

On March 1, 2016, Ien, a former employee of the Debtors, commenced the Ien

Proceeding on behalf of herself and a class of all similarly situated former employees of the

Debtors.  (*See Adversary Class Action Complaint*, dated Mar. 1, 2016 ("*Ien Complaint*")

(ECF/Ien Doc. # 1).)  The *Ien Complaint* asserted federal and New York WARN Act claims and

claims for unpaid wages under New York, Pennsylvania and Maryland law.  In addition to the

Debtors, the *Ien Complaint* named Patriarch Partners, LLC ("Patriarch Partners"), its founder

and CEO Lynn Tilton, and several direct or indirect subsidiaries of Patriarch Partners: ARK

---

[3]      The three actions, all pending in the United States District Court for the Southern District of New York,
are: *Gisinger v. Tilton*, Case No. 16-cv-1564 (ER), *Garcia v. Patriarch Partners, LLC*, Case No. 16-cv-1596 (ER),
and *Eisenstadt v. Patriarch Partners, LLC*, Case No. 16-cv-2831 (ER).  The defendants in *Gisinger v. Tilton* are
Lynn Tilton and Patriarch Partners, LLC.  The defendants in *Garcia v. Patriarch Partners, LLC* and *Eisenstadt v.
Patriarch Partners, LLC* are Patriarch Partners, LLC and "XYZ Entities 1-10."

4

CLO 2001-1 Limited ("ARK CLO"), ARK Investment Partners II, L.P. ("ARK Investment"),

and Patriarch Partners III, LLC ("Patriarch III," and collectively with Patriarch Partners, Tilton,

ARK CLO and ARK Investment, the "Ien Defendants").  It alleged that the Debtors and the Ien

Defendants were part of a single employer group, (*Ien Complaint* at ¶ 25), setting forth in some

detail the roadmap of ownership that connected the Debtors to the Ien Defendants as well as their

common management and joint operational structure.  (*Id.* at ¶¶ 26-32, 50.)   The *Ien Complaint*

also averred that the Tilton and Patriarch Partners exercised *de facto* control over the Debtors.

The Debtors did not have an independent CEO, and Patriarch Partners terminated the Debtors'

CEO in January 2016 and advertised an opening for the position on its website.  (*Id.* at ¶¶ 37-39.)

It then installed Peter Wolf as the COO and the Carl Marks Advisory Group as the CFO of the

Debtors.  However, W. Randall Jones, Jean Luc Pelissier and John Harrington, managing

directors at Patriarch Partners, and Michael Greenberg, a Patriarch Investment and Credit

Professional, oversaw the Debtors' operations and finances, including exercising control over the

timing and payment of amounts to vendors and creditors. (*Id.* at ¶¶ 40- 42.)  Patriarch Partners

demanded and the Debtors paid Patriarch Partners management fees and $400,000 in interest

payments each month ahead of other obligations such as payroll.  (*Id.* at ¶ 45.)

The Debtors also depended on Patriarch Partners for their day to day financial support,

and Patriarch Partners did not permit the Debtors to obtain their own funding or attain

independent viability.  (*See id.* at ¶¶ 51, 53, 54.)   Patriarch Partners infused capital so that the

Debtors could make payroll and pay other expenses and reimbursed itself with interest taken

from the Debtors.  (*Id.* at ¶ 46.)  Patriarch Partners and Tilton decided to place the Debtors into

bankruptcy and planned to transfer the existing business into a new ambulance business called

"Transcendence." (*Id.* at ¶ 47.)  However, the plan did not come to fruition.  (*Id.*)   Patriarch

Partners and Tilton then decided not to fund the Debtors' payroll, which had been accruing since February 14, 2016, with full knowledge that the Debtors had no other source for such funding. (*Id.* at ¶ 48.)  The decision not to fund payroll caused the filing of the chapter 7 cases, the immediate shutdown of the Debtors' operations, and the termination of approximately 1,700 employees.  (*Id.* at ¶ 49.)

The Ien Defendants filed an answer to the *Ien Complaint* on April 22, 2016.  (*Answer to Adversary Class Action Complaint*, dated Apr. 22, 2016 ("*Answer*") (ECF/Ien Doc. # 18).)  The *Answer* admitted that Tilton was "an owner and sole director of TransCare," (*id.* at ¶ 25), but denied that the Ien Defendants and the Debtors comprised a single employer group.  (*Id.* at ¶¶ 19-20, 25.)  The *Answer* also asserted twenty eight affirmative defenses, including statutory defenses under the federal and New York WARN Acts.  (*Id.* at 17-20.)

### B.  The *Pena Complaint*

On April 1, 2016, Joseph Pena, Michelle Escobar and Mercedes Tavares (collectively, the "Pena Plaintiffs"), also former employees of the Debtors, initiated the Pena Proceeding on behalf of an identical class.  (*Adversary Proceeding Class Action Complaint*, dated Apr. 1, 2016 ("*Pena Complaint*") (ECF/Pena Doc. # 1).)  The *Pena Complaint* asserted federal and New York WARN Act claims.  Like the *Ien Complaint*, the *Pena Complaint* alleged that the Debtors failed to give proper notice before terminating their employees, (*id.* at ¶¶ 161-62, 173-74), but did not assert claims for unpaid wages under New York, Pennsylvania and Maryland law.  The defendants in the two adversary proceedings were identical with two exceptions: the *Pena Complaint* named ARK Investment GP II LLC ("ARK GP"), but failed to join Tilton.

6

Like the *Ien Complaint,* the *Pena Complaint* asserted that the Debtors and the Pena Defendants constituted a single employer group and largely mirrored the allegations in the *Ien Complaint* regarding the ownership and management of the Debtors. (*See id.* at ¶¶ 39-44.) The *Pena Complaint* also alleged that Patriarch Partners terminated the Debtors' CEO in January 2016 and advertised the opening on its website, (*id.* at ¶ 49), hired a restructuring advisory firm to take over the Debtors' CFO function, (*id.* at ¶ 50), and exerted control over the Debtors' operations and finances through Pelissier, Jones and Greenberg.[4] (*Id.* at ¶ 52.)

The *Pena Complaint* also repeated the allegations relating to Patriarch Partners' financial control over the Debtors. It alleged that the Debtors received funding for payroll and other expenses from Patriarch Partners, (*id.* at ¶¶ 53, 64), Patriarch Partners received monthly management fees and interest payments, which were paid ahead of other obligations, (*id.* at ¶ 63), Patriarch Partners did not allow the Debtors to obtain operational funds independently, (*id.* at ¶ 70), and the mass termination of the Debtors' employees resulted from Patriarch Partners' decision to stop funding for the Debtors. (*Id.* at ¶ 75.) The *Pena Complaint* further alleged that Patriarch Partners, the Debtors' COO and the Carl Marks Advisory Firm attempted to spin off some of the Debtors' more profitable divisions by creating two new entities to continue the Debtors' operations and conducting a strict foreclosure of certain of the Debtors' assets, including their vehicles, contracts and certifications for operation. (*Id.* at ¶¶ 84, 86.)

The *Pena Complaint* went into detail about the amount of control Tilton and Patriarch Partners exercised over the Debtors and the extent to which the Debtors were dependent on Tilton and Patriarch Partners. In January 2016, the Debtors narrowly avoided a shutdown

---

[4]        The *Pena Complaint,* however, omitted any reference to John Harrington.

7

because of Patriarch Partners' failure to provide or obtain funding to make a workers'
compensation insurance payment. (*Id.* at ¶¶ 54, 79-81.) The Debtors also missed payroll three
times in 2015 due to Patriarch Partners' decision not to provide or obtain the necessary funds.
(*Id.* at ¶¶ 55, 76-78.) Patriarch Partners controlled the timing and amounts of payments to
creditors and vendors and held approval authority over equipment expenses. (*Id.* at ¶¶ 56, 65.)
In November 2015, Patriarch Partners refused to allow the Debtors' CEO to purchase a new
ambulance, which was necessary to meet the 911 division's contractual obligations. (*Id.* at ¶¶
57, 65-69.) Patriarch Partners also refused to entertain an offer from a competitor to purchase
the Debtors' paratransit contract with the Metropolitan Transit Authority (the "MTA"), which
had been arranged by the Debtors in order to raise operational funds. The sale would have
generated a large amount of revenue because the Debtors had secured a five-year, $130 million
extension of its contract in July 2015. (*Id.* at ¶ 71.) Members of Patriarch Partners also attended,
participated in and led meetings and conference calls with the Debtors' contractual partners
regarding the maintenance and renewal of service contracts and with Wells Fargo Bank, N.A
regarding funding requests. (*Id.* at ¶ 58.) Finally, Patriarch Partners decided not to fund the
Debtors payroll and placed the Debtors in bankruptcy. (*Id.* at ¶¶ 119, 129.)

The *Pena Complaint* also sought to undercut the anticipated defenses. For example, it
alleged that the Debtors' "demise was neither sudden nor unexpected." (*Id.* at ¶ 89.) In the
months leading up to the bankruptcy, the Debtors experienced a number of serious financial
crises that could have resulted in immediate shutdown and termination of their employees. The
Pena Defendants, therefore, had ample opportunity to give advance notice to employees in
accordance with the WARN Acts. (*Id.* at ¶ 90.) These crises included the Debtors' failure to
make payroll on three separate occasions in 2015, (*id.* at ¶¶ 91-98), the near shutdown of

operations in January 2016 due to the Debtors' missed workers' compensation payment, (*id.* at ¶¶ 99-103), and the loss of contracts with municipalities and hospitals beginning in January 2016. (*Id.* at ¶¶ 104-10.)

Furthermore, the Pena Defendants had already made the decision in January 2016 to shut down certain of the Debtors' divisions and transferred certain operations to two entities incorporated in Delaware on February 10, 2016. (*Id.* at ¶¶ 106, 114.) Transcendence Transit, Inc. was created in order to acquire the Debtors' Pittsburgh and Hudson Valley ambulance divisions, (*id.* at ¶ 112), and Transcendence Transit II, Inc. was created to acquire the Debtors' New York City paratransit division. (*Id.* at ¶ 113.) The remaining divisions were to be shut down and liquidated through a chapter 7 bankruptcy. (*Id.* at ¶ 115.) Pelissier, one of Patriarch Partners' managing directors, informed the Hudson Valley division that it would continue operations and that Tilton was committed to investing $10 million into its operations. (*Id.* at ¶ 116.) Jones, another managing director, directed an officer of the Debtors to communicate to the MTA that the paratransit division was not being shut down and that its operations would continue through the new entity. (*Id.* at ¶ 117.) Notwithstanding these forewarnings, the Debtors' employees were not given any advance notice that they would lose their jobs. (*Id.* at ¶¶ 130-31.)

### C.  The Motion to Dismiss or Consolidate

On April 6, 2016, Ien filed a motion to appoint her attorneys, Outten & Golden, as interim class counsel and to dismiss the Pena Proceeding, or alternatively, consolidate it with the Ien Proceeding. (*Motion Pursuant to Fed. R. Bankr. P. 7023(g)* [*sic*] *for Appointment of Interim Class Counsel*, dated Apr. 6, 2016 ("*Dismissal Motion*") (ECF/Pena Doc. # 4); *see also Plaintiff's Memorandum of Law in Support of Motion Pursuant to Fed. R. Bankr. P. 7023(g)*

9

[*sic*] *for Appointment of Interim Class Counsel*, dated Apr. 6, 2016 ("*Moving Memo*"), at 1

(ECF/Pena Doc. # 5).)[5] Ien argued that appointment of interim class counsel would promote

efficient management of the action, (*Moving Memo* at 8), and that Outten & Golden was best

able to represent the interests of the class because it had done a significant amount of work in the

case, possessed a great amount of experience and knowledge regarding WARN Act litigation,

and was capable of committing necessary resources to litigate the case.  (*Id.* at 9-15.)[6]

    Ien also contended that the Pena Proceeding was duplicative of her proceeding and that

other bankruptcy courts had dismissed later class actions in similar circumstances, notably in

*Thielmann v. MF Global Holdings Ltd. (In re MF Global Holdings, Ltd.)*, 464 B.R. 619 (Bankr.

S.D.N.Y. 2012), and *Frye v. Dig. Domain Media Grp. Inc. (In re Dig. Domain Media Grp. Inc.)*,

Adv. Nos. 12-50843 (BLS) & 12-50874 (BLS), 2012 WL 6135353 (Bankr. D. Del. Dec. 7,

2012).  (*Moving Memo* at 15.)  If the Court did not dismiss the Pena Proceeding, Ien asked that it

be consolidated with her proceeding for the sake of economy of administration.  (*Moving Memo*

at 16-17.)

    The Pena Plaintiffs opposed the *Dismissal Motion* and argued instead that the Court

should consolidate the two proceedings[7] and appoint Outten & Golden and Cary Kane LLP

---

[5]     The *Dismissal Motion* and *Moving Memo* were also filed in the Ien Proceeding.  (ECF/Ien Doc. ## 11, 12.)

[6]     Ien also submitted the declaration of Jack Raisner, Esq., a partner at Outten & Golden, in support of the motion.  (*Declaration of Jack A. Raisner in Support of Plaintiff's Motion for Appointment Interim Class Counsel Pursuant to Fed. R. Bankr. P. 7023(g)* [*sic*], dated Apr. 6, 2016 ("*Raisner Declaration*") (ECF/Pena Doc. # 5-2).)  Raisner detailed his firm's extensive experience as plaintiff's counsel in WARN Act litigation, including class action adversary proceedings.  (*Id.* at ¶¶ 32, 35.)

[7]     *See Pena Plaintiffs' Objection to Ien Plaintiff's Motion Pursuant to Fed. R. Bankr. P. 7023(g) for Dismissal of Pena's Complaint and Appointment of Outten & Golden as Interim Class Counsel, and in Support of Pena Plaintiff's Cross-Motion Pursuant to Rules 42(a) and 23(g) for Consolidation of Related Actions and for the Appointment of Cary Kane and Outten & Golden as Co-Interim Class Counsel*, dated Apr. 19, 2016 (ECF/Pena Doc. # 8); *Pena Plaintiffs' Memorandum of Law Objecting to Ien Plaintiff's Motion Pursuant to Fed. R. Bankr. P. 7023(g) for Dismissal of Pena's Complaint and Appointment of Outten & Golden as Interim Class Counsel, and in*

("Cary Kane"), counsel for the Pena Plaintiffs, as co-interim class counsel.  (*Opposition Memo* at

14-15.)  In the main, the Pena Plaintiffs claimed that their action was not duplicative of the Ien

Proceeding and the allegations in the *Pena Complaint* "significantly strengthen[ed]" the class

claims in several ways: (i) they weakened the defendants' ability to rely on two statutory

defenses, the "faltering company" and "unforeseen business circumstances" defenses, (*id.* at 11-

12), (ii) they provided stronger groundwork for establishing single employer liability, (*id.* at 13),

and (iii) the *Pena Complaint* added ARK GP as a defendant, thereby increasing the potential

pool for recovery.  (*Id.* at 14.)  The Pena Plaintiffs also maintained that Cary Kane was "ready

and willing to serve as interim class counsel" if the Court were inclined to appoint a single firm.

(*Id.*)  However, because the Pena Plaintiffs were seeking consolidation of the two actions and

given Outten & Golden's experience in WARN Act litigation, the Pena Plaintiffs sought

appointment as co-interim counsel.  (*Id.* at 14-15.)  The Pena Plaintiffs contended that a co-

interim class counsel structure could benefit the class, with Outten & Golden contributing its

WARN litigation expertise and Cary Kane bringing its extensive fact investigation to the table.

(*Id.* at 19.)

Ien replied that the case was neither so large nor sufficiently complex to warrant the

appointment of multiple firms as interim class counsel.  (*Plaintiff's Reply Memorandum of Law

in Support of Motion Pursuant to Fed. R. Bankr. P. 7023(g)* [*sic*] *for Appointment as Interim

Class Counsel*, dated Apr. 26, 2016 ("*Reply*"), at 3, 12 (ECF/Pena Doc. # 11).)  Ien also disputed

the efficacy of pleading additional factual allegations in a complaint in order to defeat

---

*Support of Pena Plaintiff's Cross Motion Pursuant to Rules 42(a) and 23(g) for Consolidation of Related Actions
and for the Appointment of Cary Kane and Outten & Golden as Co-Interim Class Counsel, dated Apr. 19, 2016
("Opposition Memo"), at 6-7 ECF/Pena Doc. # 9).*

affirmative defenses, (*id.* at 9), and contended that consolidation was unnecessary and wasteful because the Ien Defendants had already filed an answer to the *Ien Complaint.* (*Id.* at 14.)

## DISCUSSION

### A. Dismissal of the Pena Action

A trial court has broad discretion to determine whether consolidation of actions sharing common questions of law and fact is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). This power comes from the court's inherent authority to "control disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *MF Global*, 464 B.R. at 623 (Bankr. S.D.N.Y. 2012) (quoting *Lester-Krebs, Inc. v. Geffen Records, Inc.*, 85 Civ. 6320, 1985 WL 4270, at *2 (S.D.N.Y. Dec. 4, 1985)); *accord Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Rule 42 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7042 of the Federal Rules of Bankruptcy Procedure, governs consolidation of adversary proceedings. Rule 42 provides in relevant part:

> **(a)    Consolidation.** If actions before the court involve a common question of law or fact, the court may:
>
> (1)    join for hearing or trial any or all matters at issue in the actions;
>
> (2)    consolidate the actions; or
>
> (3)    issue any other orders to avoid unnecessary cost or delay.

When exercising its discretion, the court must weigh the risk of prejudice and confusion against the risk of inconsistent adjudication of common factual and legal issues, the burden posed by multiple actions on the parties, witnesses and judicial resources, the length of time required to conclude multiple actions, and the relative expense of multiple trials. *Celotex*, 899 F.2d at 1285 (citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985)).

In addition to the power to consolidate multiple cases, the court also has the discretion, pursuant to the "general power to administer its docket," to stay or dismiss a suit that is duplicative of another federal court suit. *Curtis*, 226 F.3d at 138 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013); *MF Global*, 464 B.R. at 623. When determining whether to dismiss a duplicative action, the court must "consider the equities of the situation." *Curtis*, 226 F.3d at 138; *MF Global*, 464 B.R. at 623. A suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *Morency v. Village of Lynbrook*, 1 F. Supp. 3d 58, 62 (E.D.N.Y. 2014) (citing *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)); *James v. AT&T Corp.*, 334 F. Supp. 2d 410, 411 (S.D.N.Y. 2004) (citing same). At the same time, the court must be careful "when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself…the claims asserted in both suits are the also the same." *Curtis*, 226 F.3d at 136; *MF Global*, 464 B.R. at 623.

Although this rule is typically applied to non-class action litigation, it has also been invoked in connection with multiple class action suits involving the same defendants and similar claims. *Quinn*, 958 F. Supp. 2d at 539 (noting that rule applies where parties and claims in both class actions are "identical or substantially similar"); *Bukhari v. Deloitte & Touche LLP*, No. 12 Civ. 4290 (PAE), 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012) (same); *see also Lopez v. Ferguson*, 361 F. App'x 225, 226 (2d Cir. 2010) (dismissing subsequently filed class action as duplicative of prior class action asserting same claims against a similar group of defendants). In that the context, courts look for substantial similarity in the claims, defendants and putative classes represented in each action. *See Quinn*, 958 F. Supp. 2d at 539-40 (finding no overlap

13

between putative classes and claims asserted); *Bukhari*, 2012 WL 5904815, at *3-4 (same);

*Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM), 2011 WL 1143010, at *3-4 (S.D.N.Y. Mar. 21,

2011) (finding that putative classes and claims were substantially similar).

A comparison of the *Ien* and *Pena Complaints* demonstrates that they are largely

duplicative and share more than a "rough resemblance."  Both Ien and the Pena Plaintiffs purport

to represent the same class of former employees, the defendants in both actions are nearly

identical, and both complaints assert identical WARN Act claims.  They diverge in two respects,

neither of which favors the Pena Plaintiffs.  First, the Pena Plaintiffs joined ARK GP, an entity of

unknown worth which, they speculate, will make recovery more likely, (*Opposition Memo* at

14), but failed to join Lynn Tilton, the Debtors' owner and sole shareholder and the CEO and

founder of Patriarch Partners.

Second, the *Ien Complaint* asserts claims for unpaid wages under New York, Maryland

and Pennsylvania law against the Ien Defendants; the *Pena Complaint* does not.  The Pena

Plaintiffs explained that they omitted these claims because they were uncertain whether they

could assert the wage claims against the Debtors in an adversary proceeding as opposed to a

proof of claim.  (*Opposition Memo* at 9.)  As Ien points out, however, these claims cannot be

asserted against non-debtor defendants through a proof of claim and must be presented in a

complaint.  (*Reply* at 10.)  Furthermore, this chapter 7 case is currently a no-asset case.

According to the *Notice of Chapter 7 Bankruptcy Case −− No Proof of Claim Deadline* (Official

Form 309C) (ECF/Main Case Doc. # 20), "[n]o property appears to be available to pay creditors.

Therefore, please do not file a proof of claim now."  Thus, no proofs of claim may ever be filed

or paid.

The Pena Plaintiffs' "additional allegations" tending to undercut the affirmative defenses also fail to supply a reason against dismissal. First, the Court must look to the claims, parties and relief sought to determine whether a complaint is duplicative. *Morency*, 1 F. Supp. 3d at 62. Second, the defendants answered the *Ien Complaint* and did not move to dismiss it for legal insufficiency. Third, the validity of the affirmative defenses will be based on the evidence, not the pleadings. The factual allegations in the *Pena Complaint* weaken the defendants' affirmative defenses only to the extent that they are supported by evidence to be adduced through pre-trial discovery.

In short, there is no benefit to consolidating the Pena Proceeding with the Ien Proceeding instead of dismissing it, and there is a downside to the former course. Consolidation would require interim counsel to craft a consolidated class action complaint and require the defendants to file an amended answer, all of which would serve to increase the cost and delay the resolution of this action. Therefore, in the interest of judicial economy, the Court exercises its discretion and dismisses the Pena Proceeding.

## B.  Designation of Interim Class Counsel

Rule 23(g)(3) permits the Court to appoint interim class counsel, *see* FED. R. CIV. P. 23(g)(3) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."), and generally considers the same factors used in determining the adequacy of class counsel upon certification under Rule 23(g)(1)(A). *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Rule 23(g) states in relevant part:

> **(1) Appointing Class Counsel.** Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(**A**) must consider:

(**i**) the work counsel has done in identifying or investigating potential claims in the action;

(**ii**) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(**iii**) counsel's knowledge of the applicable law; and

(**iv**) the resources that counsel will commit to representing the class;

(**B**) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class

The Rule 23(g)(1) factors favor appointment of Outten & Golden as interim class counsel.[8]  First, the firm has done significant work in identifying and investigating potential claims in the action.  The firm was contacted by potential clients following the commencement of the Debtors' bankruptcy case, (*Raisner Declaration* at ¶ 4), and its attorneys and paralegals began interviewing former employees, including several accounting employees who had witnessed Patriarch Partners' day-to-day involvement in the Debtors' operations.  (*Id.* at ¶¶ 5-6.)  In addition, the firm researched records and reviewed materials relating to the relationship between the Debtors and their ownership.  (*Id.* at ¶ 7.)  Following the filing of the *Ien Complaint*, Outten & Golden started preliminary conversations with various interested parties, including the New York State Assistant Attorney General, (*id.* at ¶ 11), officials at the New York State Department of Labor, (*id.* at ¶ 12), and counsel for a transit workers' union.  (*Id.* at ¶ 13.)  The firm also engaged in conversations with the Trustee regarding the general condition of the estate as well as details relating to unpaid wages, employees' health care benefits and the 401(k) plan.

---

[8]    The Pena Plaintiffs moved to appoint Cary Kane as co-interim class counsel in a consolidated proceeding. (*Opposition Memo* at 14-15.)  When more than one "adequate" applicant seeks appointment as interim class counsel, the court must appoint the applicant that is "best able to represent the interests of the class."  *See* FED. R. CIV. P. 23(g)(2); *In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009). However, dismissal of the Pena Proceeding effectively moots the Pena Plaintiffs' request to appoint Cary Kane as co-counsel.

(*Id.* at ¶ 15.)  Finally, the firm had preliminary discussions with counsel to the defendants

regarding various substantive and procedural aspects of the case.  (*Id.* at ¶ 19.)

Second, Outten & Golden has extensive experience in litigating WARN Act class actions,

a fact even Cary Kane conceded.  It has filed over 100 WARN Act class actions in federal courts

since 2007, (*id.* at ¶ 29), and having served as plaintiff's counsel in over 80 actions.  (*Id.* at ¶ 32.)

Moreover, this experience includes WARN Act class action litigation in bankruptcy court.  (*Id.*

at ¶ 35.)

Third, attorneys at Outten & Golden have extensive knowledge of applicable law and are

recognized authorities on the WARN Act.  Outten & Golden attorneys have written numerous

articles and frequently lecture on WARN Act class action litigation.  (*Id.* at ¶¶ 42-43.)  Outten &

Golden attorneys have also testified before the United States Senate Health Education Labor and

Pensions Committee, (*id.* at ¶ 44), and are often cited in news publications such as the Wall

Street Journal and the New York Times.  (*Id.* at ¶ 45.)

Fourth, the firm is able to commit substantial resources to representing the class.  The

firm has over 50 attorneys practicing employment law, and the WARN Act practice group

includes two partners, an associate, a staff attorney and three paralegals.  The firm also maintains

a website exclusively dedicated to the WARN Act.  (*Id.* at ¶ 47.)

Accordingly, the *Dismissal Motion* is granted and Outten & Golden is designated interim

class counsel.  Ien is directed to settle separate orders on notice.

Dated: New York, New York
        May 23, 2016


                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge